SONNY OLSEN (USB #11308)
**AXIOM LEGAL**
730 S. Sleepy Ridge Dr. Ste 300
Orem, Utah 84058
Telephone: (801) 960-3696
sonny@axiom-legal.com
*Attorney for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT,
CENTRAL DISTRICT, STATE OF UTAH**

| | |
|---|---|
| VISION SECURITY, LLC., a Utah Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>JUSTON DOSPITAL, an individual;<br><br>Defendant. | **COMPLAINT**<br><br>Jury Demand<br><br>Case No.:  2:14-cv-00143<br><br>Judge:  Dee Benson |

Plaintiff Vision Security, LLC ("Vision"), by and through counsel of record of the law firm Axiom Legal, and for causes of action against Defendant Juston Dospital, hereby alleges, avers, and complains as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.  Plaintiff Vision Security, LLC. ("Vision") is a Utah Corporation organized and existing under the laws of the State of Utah and conducting business in Utah County, State of Utah.

2. Defendant Juston Dospital ("Dospital") is an individual that upon information and belief is residing in Litchfield Park, Arizona.

3. Jurisdiction in this Court is proper pursuant to § 28 USC 1332.

4. Venue is proper before this Court pursuant to § 28 USC 1391(b)(2). Moreover, Defendant Dospital signed an agreement with Vision wherein he agreed to be subject to jurisdiction in Federal Court and venue in the State of Utah.

## GENERAL ALLEGATIONS

*Background on Vision*

5. Vision is a direct sales and fulfillment company that focuses on door-to-door sales of Alarm Services and related services.

6. Vision's business is seasonal in nature, with most of its door-to-door sales efforts occurring in the months of April through August (the "sales season").

7. During the other months of the year (the "off-season"), Vision focuses on recruiting additional salespeople and maintaining its current salespeople who will work for Vision the following sales season. During the fall and spring months, Vision also continues to make sales. For Vision to succeed and be profitable, it is necessary, year to year, for Vision to retain its sales-force, the integrity of its sales program, the leads for potential sales it generates, and to maintain the clientele it has converted to sales.

8. Vision's greatest assets are the goodwill that it develops with its customers, its database of customer information, its database of potential leads and lead generation areas for sales, the integrity of its sales program, and the sales materials related to its operations.

9. The direct sales industry is very competitive, with companies offering very large bonuses and other perks to new and continuing salespeople. Particularly, other direct sales companies recruit and attempt to poach those individuals from another company with extensive contacts within that company (to effectuate a migration of sales people to the new company) and with access to customer accounts, potential leads, and sales data.

10. Vision's success depends on maintaining its clientele, protecting its customers' contact information and sales information, potential sales leads and data, and protecting the integrity of its sales program.

11. When Vision recruits a new salesperson, Vision invests a significant amount of time and money in training that person in direct marketing techniques and in the products and services sold by Vision. Vision makes this investment with the hope that the new salespeople will spend multiple sales seasons with Vision. Salespeople generally become more and more successful and profitable for Vision the longer they stay with Vision. And, as a person stays with Vision for multiple years, the person becomes a leader for Vision and participates substantially in recruiting and sales-force retention and development.

*Vision's Confidential Trade Secret Information*

12. Through years of considerable effort and expense, Vision has grown into a successful alarm security company and acquired tens of thousands of customers.

13. Vision has expended substantial time, money, and resources in acquiring, maintaining, and retaining its customers.

14. Vision's competitors are constantly engaged in efforts to take over Vision's customers.

15. Maintaining and retaining its customers is vital to Vision's success and viability.

16. Accordingly, Vision invests substantial time and money to protect and guard the details about its customer accounts.

17. Such information includes, but is not limited to, the customer's name, phone numbers, home address, email address, contract terms, and the particular services and equipment Vision provides to the customers (the "Confidential Trade Secret Information").

18. The Confidential Trade Secret Information is not known outside of Vision, is not ascertainable by the general public, and can only be obtained by an outsider through unlawful means.

19. The Confidential Trade Secret Information derives independent economic value from not being generally known to other persons who can obtain economic value from its disclosure and use.

20. The Confidential Trade Secret Information would be extremely valuable to Vision's competitors as it would allow competitors to target customers in such a way that fair competition would not.

21. Vision uses the Confidential Trade Secret Information in various aspects of its business and for various reasons.

22. It is imperative to Vision's success that Vision maintain the confidentiality of its proprietary information.

23.     In addition to spending considerable amounts of time and money recruiting and retaining its sales-force, Vision also requires that a person execute a Non-Disclosure and Non-Solicitation agreement when he or she becomes affiliated with Vision.  This agreement is designed to protect the goodwill that Vision reposes in those people recruiting and retaining Vision's sales-force and to protect Vision's proprietary information.

*Defendant Hired by Vision as an Executive*

24.     Defendant Dospital was hired by Vision to work as a Regional Manager Executive and signed an Agreement on October 19, 2012.  The terms of the Agreement are confidential. [1]

25.     As part of his agreement with Vision, Dospital negotiated an advance on commissions earned, payable by Vision to Dospital, and secured by a Promissory note at the time of his hiring. The advance on commissions was contingent on his future performance at Vision. The terms of the Agreement are confidential. [2]

26.     Under the Addendum Agreement, Dospital agreed that if he did not complete the 2013 and 2014 sales season he would forfeit the advance on commissions and the entire amount due and immediately payable with interest to accrue at the rate of 18% per annum. Exhibit B.

27.     The rights of Dospital under his October 12, 2012 Agreement with Vision is also secured by collateral in the form of compensation due to Dospital resulting from accounts sold

---

[1] *See* Addendum Agreement attached hereto as Exhibit A,
[2] *See* Security Agreement and Promissory Note dated October 12, 2012 attached hereto as Exhibit B, which is filed under Seal.

by Dospital under a 2013 Direct Seller Agreement. The terms of the Direct Seller Agreement are confidential as are the terms of the promissory notes.  Exhibit B, ¶2 (Exhibit A to Exhibit 2). [3]

28. On or about January 23, 2013, Dospital extended his contract with Vision and in the process negotiated a second advance on commissions.  The terms of the Agreement are confidential. [4]

29. The rights of Dospital under his January 23, 2013 Security Agreement with Vision are secured by collateral in the form of compensation due to Dospital, resulting from accounts sold by Dospital under a 2013 Direct Seller Agreement, and secured by rights under the parties' January 23, 2013 Profit Share Agreement. Exhibit C, ¶2 (Exhibit A to Exhibit 2).[5] The terms of the Profit Share Agreement are confidential.

30. Under the Profit Share Agreement, Dospital agreed he would work as a Vice President of Sales, he would be a fiduciary to Vision's members, he would not solicit Vision's workers, and that he would not compete against Vision. Exhibit E at ¶2.

31. Under the Profit Share Agreement, Dospital covenanted not to disclose confidential information. Exhibit E at ¶3.

32. Under the Profit Share Agreement, Dospital agreed that if he breached his Profit Share Agreement or elected not to fulfill the repayment obligations in the October 12, 2012 and January 23, 2013 Agreements, he would forfeit his interest in Vision.  Exhibit E at ¶4.

---

[3] *See* Direct Seller Agreement attached hereto as Exhibit D, which is filed under Seal.
[4] *See* January 23, 2013 Security Agreement and Promissory Note attached hereto as Exhibit C, which is filed under seal.
[5] See Profit Share Agreement attached hereto as Exhibit E, which is filed under seal.

33. Under the Profit Share Agreement, Dospital agreed that if he breached his Profit Share Agreement or elected not to fulfill the repayment obligations in the October 12, 2012 and January 23, 2013 Agreements, he confesses judgment for the amount he was advanced as commission, plus interest.  Exhibit E at ¶4.

*Defendant Leaves Vision to Work For a Competitor*

34. Recently, Dospital unilaterally and prematurely terminated his employment with Vision, and upon information and belief, is now working for a competitor, directly competing against Vision for its sales-force and clientele.

35. Without the approval of Vision, Dospital has shared with others the terms of his October 12, 2012 and January 23, 2013 Agreements, his Addendum Agreement, his Direct Seller Agreement, and his Profit Share Agreement.

36. Recently, and since leaving the employ of Vision, Dospital has solicited Vision's workers in violation of his Agreements with Vision.

37. Before Dospital left Vision, Dospital accessed Vision's computers to obtain the information of its customers, including names, addresses, product and contract data, credit score, social security number, and other customer identification information. Defendant also used Vision's computers to traffic this information.

38. Defendant Dospital has inappropriately distributed and shared with others the Confidential Trade Secret Information.

39. Dospital's acquisition of the Confidential Trade Secret Information gives him, and the company he works for, an unlawful and unfair competitive advantage.

40.     Dospital's unlawful distribution of the Confidential Trade Secret Information to Dospital's employers has allowed Dospital and his employer to unlawfully and unfairly take over and convert numerous Vision customers.

41.     Vision has yet to determine the scope of Defendant's unlawful distribution of the Confidential Trade Secret Information or the damages caused by his malicious actions.

*Irreparable Harm*

42.     The result of Dospital's choice to disregard his covenants to not compete against Vision, to not solicit Vision workers and to not disclose confidential information, is harming, and will continue to harm, Vision irreparably in the following ways:

   a.   Potential loss of workers who have already been trained;

   b.   Loss of current clientele of Vision;

   c.   Potential loss of relationships with Vision's affiliate companies;

   d.   Loss of production that would occur if a sales Manager or Executive was successfully recruited by Dospital. The loss is even greater because he was a regional Manager and Vice President of Sales and the potential new recruits he would have hired and the sales they would have generated are now lost to Vision;

   e.   Vision's owners and workers have been forced and will continue to be forced to invest a significant amount of time to retain leaders and representatives, which carries a very large opportunity cost, as that time will not be able to be used in hiring and training new representatives that will sell for Vision in the future;

  f. Vision's owners and workers have been forced and will continue to be forced to take extreme measures to protect its clientele's confidential information and the information of its affiliates' account information, which is tens of thousands of records.

## FIRST CAUSE OF ACTION
(Breach of Contract)

43. Plaintiff incorporates herein each of the above paragraphs.

44. The Agreements constitute binding contracts between Dospital and Vision.

45. By engaging in the conduct described above, Dospital has materially breached his agreements and covenants with Vision and threatens further material breaches of these agreements and the covenants contained in them.

46. Prior to Dospital's breaches of the Agreement, Vision performed each and every material condition, covenant, and obligation imposed upon it under the terms of the Agreements.

47. As a result of Dospital's material breaches and threatened breaches as set forth above, Vision has been severely harmed and damaged and has suffered, and will continue to suffer, irreparable harm and other damages as set forth above.

48. Vision is therefore entitled to judgment against Defendant for damages in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
(Violation of Computer Fraud and Abuse Act – 18 U.S.C. § 1030 et seq.)

49. Vision incorporates by reference the allegations contained in the preceding paragraphs.

50. Defendant: (1) intentionally accessed Vision's protected computers without authorization and/or which exceeded Defendant's authorized access; and/or (2) knowingly and with intent to defraud trafficked Vision's confidential and protected password information through Vision's computers without authorization and such trafficking affected interstate commerce.

51. Defendant's conduct has caused damage to Vision in an amount in excess of $5,000, which amount to be established at trial, including its attorney fees and costs where allowed by law.

### THIRD CAUSE OF ACTION
(Misappropriation of Trade Secrets Under Utah Code § 13-24-1 et seq.)

52. Vision incorporates by reference the allegations contained in the preceding paragraphs.

53. The Confidential Trade Secret Information is a Trade Secret as defined by Utah Code § 13-24-2(4).

54. Vision took reasonable steps to protect and maintain its Confidential Trade Secret Information from unauthorized disclosure.

55. Defendant misappropriated Vision's Confidential Trade Secret Information.

56. Defendant violated Utah Code § 14-23-2.

57. Defendant's misappropriation of Vision's Confidential Trade Secret Information has caused Vision damages in an amount to be established at trial.

58. Defendant's misappropriation of the Confidential Trade Secret Information was willful and malicious, entitling Vision to an award of punitive damages and exemplary damages under Utah Code § 13-24-4(2).

59. Vision is entitled to an award of its reasonable attorney fees and costs pursuant to Utah Code § 12-24-5.

60. Vision is entitled to an order for injunctive relief under Utah Code § 13-24-3 that; (1) requires Defendant to disclose the full amount of the information acquired from Vision and the means by which it was acquired; (2) compels Defendant to destroy any and all Confidential Trade Secret Information in their possession or control; (3) prohibits Defendant from Disclosing the terms of his Agreements with Vision; and (4) prohibits Defendant from acquiring, disclosing, or using any of the Confidential Trade Secret Information in the future.

**FOURTH CAUSE OF ACTION**
(Unfair Competition UCA § 13-5a-101 et seq.)

61. Vision incorporates by reference the allegations contained in the preceding paragraphs.

62. Defendant engaged in unfair practices as defined by Utah Code § 13-5a-102.

63. Defendant's actions constitute an intentional business act and practice that is unlawful, unfair, and fraudulent, and has led to a material diminution in the value of Vision's intellectual property.

64. Defendant's actions constitute a malicious cyber activity under Utah Code § 13-5a-102(3).

65.     Pursuant to Utah Code § 13-5a-103, Vision is entitled to actual damages, costs and attorney fees, and punitive damages.

## FIFTH CAUSE OF ACTION
(Unfair Competition – Utah Common Law)

66.     Vision incorporates by reference the allegations contained in the preceding paragraphs.

67.     Defendant's actions constitute unfair competition under Utah common law.

68.     Defendant's tortious actions have caused, and continue to cause, Vision to sustain monetary losses and other damages and injury, in an amount to be determined at the time of trial.

69.     Defendant's actions were done knowingly, willfully, with actual malice, and in bad faith, so as to justify the assessment of increased, exemplary, and punitive damages against Defendant, in an amount to be determined at the time of trial.

## SIXTH CAUSE OF ACTION
(Intentional Interference with Contract)

70.     Vision incorporates by reference the allegations contained in the preceding paragraphs.

71.     Vision has contractual relationships with its customers.

72.     Defendant knew of the existence of the contractual relationships between Vision and its customers and intended to interfere or disrupt the performance under those contracts.

73.     Defendant interfered with Vision's contractual relations by obtaining, distributing, and using the Confidential Trade Secret Information.

74. Defendant's interference with Vision's economic relationships was without justification, was for an improper purpose, and was performed by improper means as alleged herein.

75. As a result of Defendants' actions, Vision has suffered damages in an amount to be determined at trial. Vision incorporates by reference the allegations contained in the preceding paragraphs.

**SEVENTH CAUSE OF ACTION**
(Injunctive Relief)

76. Vision incorporates by reference the allegations contained in the preceding paragraphs.

77. Defendant has engaged, and/or threatened to continue to engage, in a continuous and relentless pattern of tortuous, malicious, and unwarranted conduct as described more fully above.

78. Vision will suffer immediate and irreparable injury and damage to its existing and future business unless the Court immediately and permanently enjoins Defendant and his agents, employer, employees, representatives, and anyone in active concert with him from acquiring, accessing, using, implementing, distributing, communicating, and disclosing Vision's Confidential Trade Secret Information.

79. Vision will suffer immediate and irreparable injury and damage to its existing and future business unless the Court immediately compels Defendant to stop disclosing terms of the Agreements, to disclose to Vision the full amount of the information acquired from Vision and

the means by which it was acquired, and destroy any and all Confidential Trade Secret Information in his possession or control.

80. The harm threatened to Vision, including its loss of goodwill and harm to its reputation, outweighs any damage such an injunction might cause Defendant and such an injunction would not be adverse to the public interest.

81. There is a substantial likelihood that Vision will prevail on the merits of its claims for relief in this case and the case presents serious issues on the merits which should be the subject of further litigation.

82. Vision is also entitled to all costs of suit incurred, including all reasonable attorneys' fees, and for such other relief as deemed appropriate by the court.

**JURY DEMAND - Plaintiff requests for trial by jury.**

**PRAYER FOR RELIEF**

WHEREFORE, on each of its Causes of Action, Vision prays for judgment in its favor and against Defendant as follows:

1. For damages in an amount to be established at trial and as provided by law;

2. For exemplary damages where allowed by law;

3. For punitive damages where allowed by law;

4. For a preliminary and permanent injunction against Defendant as described above;

5. For an award of costs, attorney fees, and interest; and

6.    For such other relief as the Court deems just and reasonable under the circumstances.

SIGNED AND DATED this ___ day of February 2014.

**AXIOM LEGAL**

_/s/ Sonny Olsen_
Sonny Olsen
Attorney for Plaintiff